No. 2337

Second Circuit Appeal

---

WILLIAM A. BLACK v. LOUISIANA CENTRAL LUMBER CO.

---

(June 27, 1925, Opinion and Decree)
(See Supreme Court Docket No. 27,743)

---

*(Syllabus by the Editor.)*

1. Louisiana Digest—Master and Servant— Par. 159, 159 (a).

Where the preponderance of evidence shows that the injured employee suing under the Workmen's Compensation Law, Act No. 20 of 1914, as amended by Act 43 of 1922, can use his injured hand although the middle finger was badly injured, he is entitled to recover under Section 8, Subsection 1 (e) of the Employer's Liability Act for one hundred weeks.

(The recent amendment of Section 8 Act 20 of 1914 is Act No. 216 of 1924. Editor's note.)

2. Louisiana Digest—Master and Servant— Par. 159, 159 (a), 160 (l).

Where the evidence is conflicting as to the effect of the injury sustained by an injured employee suing for compensation under Workmen's Compensation Law, Act No. 20 of 1914, the finding of the trial judge, unless manifestly erroneous, will be affirmed.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Caldwell, Hon. F. E. Jones, Judge.

This is a suit by an injured employee for compensation under the Workmen's Compensation Law, Act No. 20 of 1914.

There was judgment for plaintiff and both plaintiff and defendant appealed.

Judgment affirmed.

Long & Crow, of Shreveport, attorneys for plaintiff, and appellant.

Thornton, Gist & Ritchie, of Alexandria, attorneys for defendant, appellant.

ODOM, J. The plaintiff was employed by defendant company in the capacity of conductor on its log train.

On January 24, 1924, while so employed and while at work in the course of his employment his right hand was caught between the drawheads of two cars and mashed, which, he alleges, resulted in partial permanent disability to do any work of a reasonable character, and that he cannot earn more than $10.00 per week, whereas, he alleges, he was at the time of the accident earning $42.00 per week. He asks to be allowed $18.00 per week for 300 weeks, less credit for certain amounts which have been paid to him.

Defendant, in answer, admits the employment, but says that plaintiff was receiving only $34.92 per week instead of $42.00 per week as alleged, and admits that plaintiff was injured while in the course of his employment by having his hand mashed, but avers that the only permanent injury received by him as a result thereof was partial disability of the middle finger of the right hand; and it avers that plaintiff has been paid all the compensation due him.

The lower court awarded plaintiff $18.00 per week for 100 weeks under Subsection (e) of Paragraph 1 of Section 8 of Act No. 43 of 1922.

From which judgment both plaintiff and defendant have appealed.

The only question to be determined is the amount of compensation due plaintiff under the facts.

As usual, the experts do not agree as to the condition of plaintiff's hand.

Dr. Peters says that he examined plaintiff's hand on October 30, 1924, and says that his examination disclosed that plaintiff had received injury to his right hand consisting of lacerations of the soft parts, indicated by several scars and a fracture of the middle finger near the proximal joint. He says there was slight deformity of the proximal phalanx, amounting to slight curvature and impairment of the extreme flexion. "He has good flexion down to the grasping point but not at the extreme flexion of the finger."

He says that the examination disclosed and that an X-ray picture of the hand showed that there was no fracture of any of the bones of the hand, except those of the middle finger; and he was asked to state if there was any disability of the hand, except to the middle finger, and he said: "There is none—only to the middle finger of the right hand, and that only to a partial degree."

He was further asked if he examined the other fingers of that hand, and he said that he did: "Looked very carefully into nature of the injuries. All of the scars were free. There were no adherent scars resulting from the lacerations, and there should be no disability whatever resulting from the injury. There is no evidence of tenderness, anaesthesia, adherence, adhesions to the tendons or any other consequence of the injuries."

He says he has as good use of the hand now as he ever had, except for the disability to the middle finger.

Dr. G. M. G. Stafford testified that he examined plaintiff's hand in June and again on October 30, 1924.

He said he found that plaintiff had several scars on his right hand and showed evidence of a fracture of the middle finger near the palm of the hand; that this fracture considerably interfered with the motion of the finger and caused considerable disability of function; that all of the wounds to the hand, had healed, and that there was very little, if any, injury to the hand, other than this broken finger.

He was asked if plaintiff could do work of a reasonable character, and he said:

"He could have done some work, yes, sir. I don't know what kind of work you mean, but I believe that there is some work probably that he could not have done, but there are lots of jobs that he could have held at that time."

And he was asked if there was any disability, so far as the hand is concerned, other than the disability to the middle finger, and he said:

"No, I don't think so."

"Otherwise no disability exists to the rest of the hand."

As to the condition of this middle finger, he says plaintiff has complete extension of the finger but has not complete flexion; that he can flex it to within one-half of an inch of the palm of his hand.

Dr. P. K. Rand testified that he had examined plaintiff's hand in April and again about October 30, 1924, and said that he found evidences of an old injury to the right hand; that there were several scars which were entirely healed and in good condition. "There were no deformities of the hand except the middle finger showed an old fracture with good union, but considerable deformity. He was unable to use this finger for full function, there be-

ing limitation of flexion of the finger. The fist, or hand, when closed left this finger extending to some extent. The other digits apparently were in good condition. I would say that he had practically full function of the hand with the exception of the middle finger."

He says he saw him later in the summer and he showed some improvement, and that he was able to close the finger further and obtain more complete flexion of the finger and that he had seen him again later and his condition had further improved and that the function of his finger had greatly improved. "There can be no permanent injury to the hand as a result of the injury which I can detect, except that related to the middle finger. Its disability has grown less all the time."

He says he had full use of all the other fingers.

On the other hand, we have the testimony of Dr. G. H. Cassity, of Shreveport, who says that he examined the plaintiff's hand on January 9, 1925.

He says there were some scars to be noted about the knuckles of the hand and a long one down inside of the thumb. Also the first bone of the middle finger of the right hand was crooked, indicating that there had been a fracture of the bone, and "I found on further examination of this hand that he had very little grip in the hand, in fact, I would say the grip was not over one-tenth of the normal hand. He could not close the fingers down to the palm with any force; could almost touch the palm of his hand with the fingers, except the middle finger.".

\* \* \* \*

"I find the fingers have very little strength in the individual fingers."

\* \* \* \*

"I noted also that the hand sweated profusely, damp, moist, most nearly all the time."

He says he tested the hand for strength with the ferradic current and was able to obtain slow flexion of the fingers but they did not react normally. And he says the wound to the hand caused "traumatic neuritis." He says he could· straighten the fingers fairly well but could not bring them tight against the palm of the hand and that there was no stiffness to the fingers except the first joint of the middle finger where it articulates with the hand.

He says that there is no deformity of the hand, except to the middle finger, and that there is no noticeable inability to flex the other fingers. He explains· that the plaintiff could not pick up a load or grip anything strongly.

Dr. E. L. Sanderson testified that he had examined plaintiff on January 9, 1925, and says "the examination shows a hand that is somewhat flabby and temperature which is lower than the other hand and has a tendency to perspire. Also shows a scar on the side of the thumb and marked deformity in the phalanx of the second finger within a quarter or half an inch of where it articulates with the hand at the joint. This deformity is angular, bent forward into the palm surface of the hand. This finger is very limited in flexion; the distal phalanx has no flexion at all. There seems to be inability to flex completely any of the fingers, but the flexion of this particular finger is unquestionably limited more than the others, evidently due to the findings I made. There is apparently a marked decrease in the grip of the hand."

And ·on cross-examination he stated that insofar as the grip of the hand was con-·cerned that he necessarily had to depend in a large measure upon what the patient said; and he was asked if he con-·sidered that the hand could be used for ordinary labor and he said:

"Well, I have observed this same injury before; seen a number of cases in which

this phalanx of the finger bulged forward as this does, and when they grip anything that angular projection causes trouble, so that they cannot close the hand, where that bone is set at an angle, and in closing the hand that knuckle joint hits any hard object it draws back, always very painful, the tendons working over that callous that has developed; when you use it it causes pain, and is a serious handicap."

And he also said with reference to the condition of the hand:

"The thumb appears to be perfectly normal, but there is apparent loss of function in the other fingers in a marked degree, but of that I am not positive whether it is due to lack of use or whether they were injured at the time of the injury, but it is very apparent that their use is limited."

And he says there is permanent weakness due to traumatic neuritis.

It will be seen that there are three physicians on the one side who say that there is very little if any injury at all to the hand except the middle finger and that his condition is growing better, while on the other hand there are two who say that the entire hand is injured with little hope of improvement.

Plaintiff says of his injury: "The main thing my middle finger is broken and disfigured and the rest of my hand is weak so that I can't grip anything with it. When I do anything out of the ordinary it hurts in my hand and the pain runs up in my arm. I haven't been able to do anything hardly, although I' have used it all the time since the injury healed up on the outside."

And he was asked:

"What have you been doing for the past few months?"

And he answered:

"I have been hauling wood from the stave mill."

The testimony as to plaintiff's condition is conflicting. It is agreed by all, however, that he can open his hand and straighten his fingers, but there is disagreement as to whether he can flex perfectly the fingers other than the middle finger.

The testimony of Doctors Sanderson and Cassity is to the effect that he can flex his middle finger to within one inch of the palm of the hand. The testimony of the other doctors is that he can flex it to within half an inch of the palm of the hand. All of the experts agree that there is no deformity of the hand, except of the middle finger. The wounds have all healed; the tendons are in good condition and move freely and easily; there are no adhesions.

Doctors Sanderson and Cassity say that the nerves were injured by the wound, and no doubt they were, but they are not dead; otherwise the patient could not use the fingers at all. The bone, muscle and tendon are uninjured. The nerves are sufficiently alive to control the muscles.

Dr. Sanderson says that plaintiff has but little grip in that hand, but he says he must depend largely upon what the patient says for his information about that.

Dr. Cassity says that he has no more grip in that hand than a five-year-old child.

In view of the testimony of the other doctors and in view of plaintiff's own testimony that he used the hand all the time since it healed on the outside and that he has been hauling wood for the past few months, that statement by Dr. Cassity sounds a little extravagant.

Plaintiff says he has no grip but he also says: "When I do anything out of the ordinary it hurts in my hand and the pain runs up my arm."

That would not indicate that he had so little use of the hand.

The fact that defendant offered to put plaintiff back to work in the same position and he refused to accept it cannot be overlooked. He says he offered to take a fireman's place, provided they used oil, but he did not explain just why he would not work as a conductor, except to say: "A man has his life in his hands when he has two hands on that job and I know I was not going to try it with one."

He did not have to try it with one; according to his own testimony he could use the right hand to some extent, and he does not explain just why it is that he could not do the work required of a conductor on a train of that kind.

During the progress of the trial the plaintiff was caused to exhibit his hand to the trial judge and to demonstrate what use he could make of it. After seeing plaintiff's hand and seeing him use it, and after considering the testimony of the physicians, he reached the concluson that plaintiff should recover under Subsection (e) of Paragraph 1 of Section 8 of the Employers' Liability Act and was entitled to compensation for one hundred weeks.

We cannot say that our brother of the District Bench has erred.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.

## ON REHEARING.

REYNOLDS, J. A rehearing was granted in this case on the application of both plaintiff and defendant.

On the rehearing plaintiff presented no additional authorities and offered no reasons other than those presented on the first hearing.

Defendant, with great zeal and earnestness, urges that the case be remanded for additional evidence as to plaintiff's ability at this time to do work of a reasonable character and supports its application by a number of documents, sworn to and attached to its application.

Defendant's application would commend itself to us with much force if our decision had been grounded on the proposition that plaintiff's injury produced partial disability to do work of any reasonable character; but our judgment was based on the ground that the usefulness of a member or physical function of plaintiff had been seriously permanently injured, and we gave him judgment under Subsection (e) of Paragraph 1 of Section 8 of the Workmen's Compensation Law; and having based our judgment on this ground, we do not think defendant's allegation that plaintiff is now able to do work of a reasonable character would warrant us in remanding the case for a new trial.

The Workmen's Compensation Law of Louisiana contemplates that judgments shall have stability and finality.

Daniels vs. Shreveport P. & R. Corp., 151 La. 800, 92 South. 341.

The judgment heretofore rendered, under all the evidence, we think, has done substantial justice between the parties, and it is now reinstated and made the judgment of the court.